# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J., a minor, by and through his guardian ad litem, KASEY L. JOHNSON,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LAMONT A. JACKSON, in his individual capacity and official capacity as Interim Superintendent of the San Diego Unified School District; CHUCK PODHORSKLY, in his individual capacity and official capacity as principal of La Jolla High School; and JOE CAVAIOLA, in his individual capacity and official capacity as vice principal of La Jolla High School,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 22cv0244 DMS (DDL)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

   This case comes before the Court on the parties' cross-motions for summary judgment. Both motions are fully briefed. After a thorough review of the issues, Plaintiff's motion is denied, and Defendants' motion is granted.

///

///

///

# I.

# BACKGROUND

The facts giving rise to this case are largely undisputed, and are set out in the parties' Joint Statement of Undisputed Facts ("Joint Statement"). (*See* ECF No. 40.) As set out therein, Plaintiff is a student at La Jolla High School ("LJHS"), which is within the San Diego Unified School District ("SDUSD"). (*Id.* ¶¶ 1, 3.) On February 4, 2022, Plaintiff was a 9th grader at LJHS, and he was involved in a fight on campus. (*Id.* ¶¶ 3, 6a.) After the fight, Defendant Joe Cavaiola, a vice principal at LJHS, interviewed Plaintiff about the fight. (*Id.* ¶ 6b.) SDUSD employee Alex Drozda, a school counselor, also met with Plaintiff to discuss the fight. (*Id.* ¶6d.) Plaintiff also submitted a handwritten statement to school administrators presenting his version of events. (*Id.* ¶6c.) Later that night, Cavaiola emailed Plaintiff's parents a written Report on Suspension that he prepared. (*Id.* ¶6e.) Per that Report, Plaintiff was being suspended from school from February 4, 2022, to February 8, 2022. (*Id.*, Ex. 2.) The incident giving rise to Plaintiff's suspension was described as "Fight on campus – Physical Injury --- Caused/Threatened/Attempted." (*Id.*) Plaintiff's mother responded to that email with her understanding of the events, and requested to meet on Monday morning. (*Id.* ¶ 6f.)

After Plaintiff was sent home on February 4, 2022, Cavaiola watched a surveillance video of part of the fight that occurred outside the school's small gym. (*Id.* ¶ 7.) On February 7, 2022, Cavaiola learned that one of the other students involved in the fight suffered injuries. (*Id.* ¶ 9.) The extent of those injuries are disputed. (*Id.*) That same day, Cavaiola communicated by phone with Plaintiff's mother regarding Plaintiff's suspension. (*Id.* ¶ 10.) The parties dispute exactly what was discussed during this call. (*Id.*)

The following day, February 8, Cavaiola sent Plaintiff's parents an email in which he stated that Plaintiff's suspension was being extended from three to five days. (*Id.* ¶ 11.) The email also stated that due to the nature of the injuries sustained in the fight, Plaintiff was being recommended for expulsion from LJHS. (*Id.*) An updated Report on Suspension was attached to the email, and it listed February 10, 2022, as the end date for

Plaintiff's suspension. (*Id.*; *Id.*, Ex. 3.) The updated Report also checked an additional box labeled "Willfully caused serious injury, except in self defense," and another box confirming that Plaintiff was being recommended for expulsion. (*Id.*)

At some time prior to February 15, 2022, Richard McFall, a counselor in SDUSD's Placement and Appeals Department, called Plaintiff's parents and invited them to a pre-expulsion meeting to discuss the expulsion process. (*Id.* ¶ 16.) That meeting was originally scheduled for February 16, 2022, but was postponed to February 22, 2022, at Plaintiff's request. (*Id.* ¶ 19.) Attendees at the meeting were Mr. McFall, Plaintiff's parents, Plaintiff's godfather and family friend, and Plaintiff's attorney. (*Id.* ¶ 20a.) During the meeting, Mr. McFall described the expulsion process and offered Plaintiff alternative placement at ALBA Community School. (*Id.* ¶ 20c.) Plaintiff's parents rejected that offer. (*Id.* ¶ 20d.) Plaintiff's parents also refused to sign a proposed Agreement and Stipulation for Expulsion. (*Id.* ¶ 20e.) Instead, they informed Mr. McFall that they wanted to exercise their right to an expulsion hearing. (*Id.* ¶ 20f.) Mr. McFall then gave Plaintiff's parents a Hearing Notification, which scheduled the hearing for March 9, 2022. (*Id.*)

On February 23, 2022, Plaintiff, through his mother, filed the present case against Lamont Jackson, the Superintendent of SDUSD, Chuck Podhorsky, the Principal of LJHS, and Caviola alleging one claim for violation of due process under 42 U.S.C. § 1983. On February 28, 2022, SDUSD rescinded the recommendation for Plaintiff's expulsion. (*Id.* ¶ 24.) On March 15, 2023, Plaintiff filed a motion for partial summary judgment requesting an award of nominal damages. On May 31, 2023, Defendants filed their motion for summary judgment, or alternatively, for partial summary judgment.

## II.

## DISCUSSION

Plaintiff alleges Defendants violated his right to due process when they extended his suspension on February 8, 2022, without first giving him the protections set forth in *Goss v. Lopez*, 419 U.S. 565 (1975). Defendants argue Plaintiff's claim against Defendants in their official capacities is barred by the Eleventh Amendment, his claim against Defendants

in their personal capacities is barred by qualified immunity, and Defendant Jackson is an improper defendant.

**A.    Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.    Due Process Violation**

The underlying substantive issue in this case is whether Defendants violated Plaintiff's right to due process when they extended Plaintiff's suspension on February 8, 2022. Plaintiff argues they did, and that is the basis for his motion for summary judgment. Defendants argue they did not, and that other defenses warrant summary judgment in their

favor. Because the alleged due process violation is central to both parties' motions, the Court addresses it first.

In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held:

> Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Id.* at 581. Here, there is no dispute Defendants complied with these due process requirements for Plaintiff's first suspension on February 4, 2022. (*See* Pl.'s Reply in Supp. of Mot. at 3.) The only dispute is whether Defendants were required to provide Plaintiff with another round of due process protections in connection with the extension of his suspension on February 8, 2022.

Plaintiff argues Defendants were required to comply with *Goss* anew when they extended his suspension. In support of this argument, Plaintiff relies primarily on *Montoya v. Sanger Unified School Dist.*, 502 F.Supp. 209 (E.D. Cal. 1980). That case involved two students who were (1) suspended for fighting and received notice of those suspensions, (2) thereafter recommended for expulsion, and (3) whose suspensions were then extended without notice. *Id.* at 210-11. The court held, "any extension of a suspension under [California Education Code] § 48903(h) is, under *Goss*, a separate, distinct suspension requiring a separate hearing." *Id.* at 213.

In opposing Plaintiff's motion, Defendants acknowledge *Montoya* but argue it "is distinguishable in several respects." (Defs.' Mem. of P. & A. in Supp. of Opp'n to Mot. at 13.) First, they state it does not refer to section 1983, which is true, but the court's discussion of *Goss* certainly suggests the claim arises under that statute. Second, Defendants assert *Montoya* has not been cited by any other court in California. However, this argument does not render *Montoya* distinguishable. It also ignores that *Montoya* was cited by the same court and several courts outside California. *See Hill v. City of Clovis*,

No. 1:11-cv-1391 AWI SMS, 2012 WL 787609 (E.D. Cal. Mar. 9, 2012); *Doe v. Todd County School Dist.*, No. Civ. 05-3043, 2006 WL 3025855 (D.S.D. Oct. 20, 2006); *Waln v. Todd County School Dist.*, 388 F.Supp.2d 994 (D.S.D. 2005); *Cole v. Newton Special Mun. Separate School Dist.*, 676 F.Supp. 749 (S.D. Miss. 1987); *Buechler v. Wenatchee Valley College*, 174 Wash. App. 141 (2013). Third, Defendants argue *Montoya* is based on the erroneous premise that "state law can be used to enlarge federal rights[.]" (Defs.' Mem. of P. & A. in Supp. of Opp'n to Mot. at 13.) The Court disagrees with that interpretation of the case. Although *Montoya* cites the California Education Code and notes certain inconsistencies in that statutory scheme, the court did not use California law to extend the plaintiff's federal constitutional rights. Rather, the court relied on "the teachings of *Goss*" in concluding that an extension of a suspension is "a separate, distinct suspension requiring a separate hearing." 512 F.Supp. at 213.

In their own motion for summary judgment, Defendants continue their attack on *Montoya*, arguing it is inapplicable for two additional reasons. First, they assert the suspensions in *Montoya* went from brief (ten days or less) to long-term (more than ten days), whereas Plaintiff's suspension remained brief even with the extension. However, the record does not support this alleged distinction. It is undisputed Plaintiff's initial suspension on February 4 was for three days. (Joint Statement, Ex. 2.) The February 8, 2022 Report on Suspension extended Plaintiff's suspension from three to five days, (*compare* Joint Statement, Ex. 2 *with* Joint Statement, Ex. 3), and based solely on that Report, Plaintiff's suspension would have remained brief. However, Mr. Cavaiola's February 8 email to Plaintiff's mother states Plaintiff "is not allowed to be on the LJHS campus nor participate in/attend any LJHS events" while the recommendation for his expulsion is pending. (Decl. of Joe Cavaiola in Supp. of Opp'n to Mot. ("Cavaiola Opp'n Decl."), Ex. B.) That recommendation remained pending until February 28, 2022, which

///
///
///

resulted in Plaintiff being suspended for sixteen days.[1] Thus, Plaintiff's suspension went from brief to long-term just like the suspensions at issue in *Montoya*. Accordingly, *Montoya* is not distinguishable on this basis.

Defendants' final challenge to *Montoya* is simply an extension of their argument that *Montoya* imports California law through section 1983. (Defs.' Reply in Supp. of Mot. at 9.) Defendants argue this approach is inconsistent with *Lovell v. Poway Unified School Dist.*, 90 F.3d 367 (9th Cir. 1996), and *Wynar v. Douglas County School Dist.*, 728 F.3d 1062 (9th Cir. 2013), and thus the Court should not adopt it here.

For the reasons set out above, the Court disagrees with Defendants' interpretation of *Montoya* as importing California law through section 1983. Nevertheless, and even assuming Defendants' interpretation is correct, *Lovell* and *Wynar* are both distinguishable from the present case. Unlike this case, *Lovell* involved a First Amendment claim, and in resolving that claim the court noted that the California Education Code extended students' free speech rights beyond those provided for under federal law. 90 F.3d at 371. In that context, the court stated that "Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws.'" *Id.* at 370 (quoting 42 U.S.C. § 1983). That holding does not apply here where Plaintiff is relying on federal constitutional law, not the California Education Code, as the basis for his claim. *Wynar*

---

[1] Defendants assert they are only responsible for the first eight days of Plaintiff's suspension, and that Plaintiff and his parents are responsible for the remaining eight days because Plaintiff's parents requested a postponement of Plaintiff's pre-expulsion meeting and rejected the District's offer of interim placement. (Defs.' Mem. of P. & A. in Supp. of Opp'n to Mot. at 8.) Notably, Defendants fail to address Mr. Cavaiola's February 8 email, which states in no uncertain terms that Plaintiff is not allowed to return to campus while the recommendation for his expulsion is pending. They also fail to mention that on February 17, 2022, the tenth day of Plaintiff's suspension, Plaintiff's mother asked Mr. McFall if Plaintiff could return to school, and his response was, "No, [Plaintiff] may not return to school at this time." (Joint Statement, Ex. 4.) Thus, regardless of Plaintiff's parents' actions, and contrary to Defendants' assertion, the District is responsible for the entire sixteen days of Plaintiff's suspension.

involved a due process claim similar to the one at issue in this case, but the basis for the claim in *Wynar* was the school district's failure to "comply with its own regulatory procedures for suspension[.]" 728 F.3d at 1072. In that context, the court stated that a school district's failure to comply with its own administrative procedures did not, by itself, constitute a violation of constitutional due process. *Id.* at 1072-73. Here, Plaintiff's claim does not rely on Defendants' failure to comply with SDUSD's policies or procedures. Rather, Plaintiff's claim relies on Defendants' failure to comply with the requirements of *Goss*.

Under *Goss* and *Montoya*, Defendants were required to provide Plaintiff with oral or written notice of the charges underlying the extension of his suspension, and if Plaintiff denied the charges, Defendants were required to provide Plaintiff with an explanation of the evidence they had and an "opportunity to present his side of the story." *Goss*, 419 U.S. at 581. Defendants assert they did so. Indeed, they contend they went above and beyond the requirements of *Goss*. Specifically, they state Mr. Cavaiola, Mr. Podhorsky and Mr. Drozda spoke with Plaintiff on February 4, and gave him an opportunity to provide his version of events. (Defs.' Mem. of P. & A. in Supp. of Mot. at 20-21.) There is no dispute those discussions took place, but they did not satisfy Defendants' obligations to provide Plaintiff with due process protections in connection with the extension of his suspension on February 8. This is especially so considering the additional allegation on February 8 that Plaintiff "[w]illfully caused serious injury except in self-defense." (Joint Statement, Ex. 3.)

Nevertheless, Defendants also state that on February 7 and 8, "Mr. Cavaiola continued to engage with Plaintiff and his parents, both orally and in writing." (Defs.' Mem. of P. & A. in Supp. of Mot. at 21.) There is evidence Mr. Cavaiola communicated with Plaintiff's parents on those dates, (Joint Statement ¶¶ 10-12), but *Goss* requires that "*the student* be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581 (emphasis added). Here, there is no evidence

Defendants communicated directly with Plaintiff at any time after February 4 and before Plaintiff's return to school on March 1. Indeed, the parties agree that did not happen. (Joint Statement ¶ 14.) Defendants also fail to cite any authority indicating that their communications with Plaintiff's parents satisfy the requirements of *Goss*.

In light of the above, the Court finds Defendants violated Plaintiff's constitutional right to due process in connection with the extension of his suspension on February 8, 2022.

## C.  Qualified Immunity

Given this finding, the Court must address whether Defendants are entitled to qualified immunity from Plaintiff's claim. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Claims of qualified immunity require the court to consider two questions, the first of which has been answered above: Whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second question asks whether the right was clearly established—that is, whether "it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *Id.* at 202. "'The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct.'" *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021), *cert. denied*, ___ U.S. ___, 142 S. Ct. 898 (2022), (quoting *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)).

Plaintiff relies on *Goss*, *Montoya*, and *Waln* to meet his burden in this case. *Goss* makes clear that students have a clearly established right to due process protections when they are facing suspensions of ten days or less. However, *Goss* does not explicitly address the more precise issue in this case, which is whether students are entitled to a second round of due process protections if an initial suspension is extended. Given the Supreme Court's warnings "'not to define clearly established law at a high level of generality[,]'" *Evans v.*

*Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), *Goss* does not satisfy Plaintiff's burden.

The only other cases Plaintiff cites are *Montoya* and *Waln*.[2] Those cases address the specific issue raised here, namely, whether students are entitled to due process protections when a suspension is extended. However, those district court decisions, "'unlike those from the courts of appeals—do not necessarily settle constitutional standards,' because '[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Evans*, 997 F.3d at 1067 (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). The Court was able to find one court of appeal decision on this issue, *see C1.G on behalf of C.G. v. Siegfried*, 38 F.4th 1270, 1281 (10th Cir. 2022) (stating *Goss* governs analysis of five-day extension of student's suspension), but that decision from outside the Ninth Circuit does not make it "'sufficiently clear that every reasonable official would have understood that what he is doing violates'" the right at issue in this case. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Because existing precedent does not place the constitutional issue in this case "'beyond debate[,]'" *Id.* at 12 (quoting *al–Kidd*, 563 U.S. at 741), Defendants are entitled to qualified immunity from Plaintiff's claims against them in their personal capacities.

**D.     Eleventh Amendment Immunity**

Turning to Plaintiff's claims against Defendants in their official capacities, Defendants argue these claims are barred by the Eleventh Amendment. "The Eleventh Amendment to the United States Constitution provides that '[t]he Judicial power of the

---

[2] The Court notes *Montoya* and *Waln* are not the only district court cases to address the issue in this case. *See C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F.Supp.3d 307, 318 (E.D.N.Y. 2016) (holding "the *Goss* rule applies to each individual suspension, rather than to the suspensions in aggregate."); *Doe*, 2006 WL 3025855, at *13 (citing *Waln*, 388 F.Supp.2d at 1007) ("Any extension of a suspension is a separate and distinct suspension requiring a separate hearing.")

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250 (9th Cir. 1992). The Ninth Circuit has stated that school district superintendents sued in their official capacities are entitled to Eleventh Amendment immunity, *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995), as are other school district employees. *See*, *e.g.*, *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 830 F.Supp. 1560, 1577 (N.D. Cal. 1993) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)) (dismissing claim against school principal).

The parties do not dispute these general principles, but they do dispute whether this case falls within the *Ex Parte Young* exception to Eleventh Amendment immunity. "In *Ex parte Young*, the Court held that the Eleventh Amendment does not bar an action seeking prospective relief against a state official for a violation of federal law." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023). The Court reasoned that "[b]ecause a state officer who violates federal law acts outside the scope of her authority, she is 'not the State for sovereign-immunity purposes' and is subject to a federal court's injunctive power." *Id.* (citing *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011)). "For a suit to proceed under *Ex Parte Young*, the plaintiff must allege—not prove—an ongoing violation of federal law for which she seeks prospective injunctive relief." *Id.* at 1221 (citing *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019)).

Here, the only injunctive relief Plaintiff requested in the Complaint was that he be allowed to return to school pending his expulsion hearing and that his parents be provided with a copy of the surveillance video. (Compl. at 11.) Defendants argue Plaintiff has received that relief, therefore Plaintiff has no ongoing harm that would allow for application of the *Ex Parte Young* exception. Plaintiff does not dispute that his Complaint was limited to that relief, but he argues the Court may still grant him other injunctive relief, namely, expungement of the February 8 suspension from his disciplinary record, which brings his case within the *Ex Parte Young* exception.

11

Federal Rule of Civil Procedure 54(c) provides that final judgments "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 5(c). There is no dispute that Rule would apply here, thus it is possible Plaintiff could receive injunctive relief in the form of expungement. *See In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) ("So long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings.") Because that possibility still exists, *Ex Parte Young* applies and Plaintiff's claim against Defendants in their official capacities is not barred by the Eleventh Amendment.

### E. Standing for Injunctive Relief

In an attempt to avoid the result above, Defendants raise yet another argument, namely, that Plaintiff lacks standing to seek injunctive relief. Specifically, Defendants argue Plaintiff cannot show any injury as the result of the inclusion of the February 8 suspension in his disciplinary record.

As the party invoking this Court's jurisdiction, Plaintiff bears the burden to show he has standing to pursue the injunctive relief he seeks. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Although Plaintiff acknowledges that *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), is the starting point for the Court's analysis, he relies on language from *O'Shea v. Littleton*, 414 U.S. 488 (1974), to support his standing argument. Specifically, he asserts that "'a real and immediate threat of repeated injury' exists where a plaintiff's past exposure to illegal conduct is accompanied by 'continuing, present, adverse effects.'" (Pl.'s Opp'n to Mot. at 10) (quoting *O'Shea*, 414 U.S. at 495-96). Plaintiff contends that standard is met here in light of Defendants' violation of his due process rights in connection with the February 8 suspension and the adverse effects he is suffering due to the February 8 suspension being in his disciplinary record. According to Plaintiff, those adverse effects include jeopardy to his future employment and college prospects and damage to his reputation.

In support of his argument on damage to future employment and college prospects, Plaintiff relies primarily on *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007). In *Flint*, the court stated that negative information in a student's record "may jeopardize the student's future employment or college career." *Id.* at 824. However, the issue in *Flint* was mootness, not standing. That distinction is important "because 'mootness, unlike standing, is a flexible justiciability doctrine.'" *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 995 (9th Cir. 2023). Indeed, because *Flint* involved mootness rather than standing, it "did not consider whether retention of disciplinary records constituted a concrete harm or an ongoing injury or gave rise to an imminent risk of injury." *Id.*

The other problem with Plaintiff's reliance on future employment and college prospects is they are just that: Prospects. Plaintiff presents no evidence that he has applied for employment or college admission and been rejected because this information is in his disciplinary record. This type of "speculation or 'subjective apprehension' about future harm" does not support a finding of standing for injunctive relief. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 183 (2000)).

The reputational harm, however, is another matter. The Supreme Court has stated that reputational harms can constitute concrete injuries under Article III. *See TransUnion LLC v. Ramirez*, 594 U.S. ___, 141 S.Ct. 2190, 2204 (2021) (listing "reputational harms" as an example of a concrete, intangible harm); *see also Kennedy v. Warren*, 66 F.4th 1199, 1205-06 (9th Cir. 2023) (stating "reputational harm provides a sufficient basis for standing"); *Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019) (stating plaintiff's "marred record is a continuing harm for which he can seek redress."). But Plaintiff has failed to submit any evidence that he has actually suffered any reputational harm as a result of the record of the February 8 suspension, and without such evidence, he has not satisfied his burden to show standing. *See Lujan*, 504 U.S. at 561 (stating that in response to a summary judgment motion, plaintiff can no longer rely on allegations of injury, "but must 'set forth' by affidavit or other evidence 'specific facts[]'" to support that element); *see*

*also Hoang v. Abbott Labs.*, No. 08C 189, 2009 WL 1657437, at *3 (N.D. Ill. June 12, 2009) (granting summary judgment for defendants where plaintiff "provided no evidence from which a reasonable finding could be made that her reputation has been injured.") Absent standing, Defendants are entitled to summary judgment on Plaintiff's request for injunctive relief.

### III.
### CONCLUSION AND ORDER

For the reasons set out above, Defendants are entitled to qualified immunity from Plaintiff's claim for damages.  Because Plaintiff has failed to show he has standing to pursue the injunctive relief he seeks, Defendants are also entitled to summary judgment on Plaintiff's claim for injunctive relief.[3]  Accordingly, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.  The Clerk of Court shall enter judgment accordingly, and close this case.

**IT IS SO ORDERED**.

Dated:  September 28, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[3] In light of these holdings, the Court declines to address Defendants' additional argument that Defendants Jackson is an improper defendant.